Judge Owsley
delivered the Opinion of the Court.
Under a letter of attorney, bearing date the 19th of November, 1793, John Fowler, in the name, and on behalf of William Mayo, conveyed by deed of bargain and sale, bearing date the 4th of July, 1794, a tract of land in the county of Madison, to Vincent Turner.
The letter of attorney under which Fowler acted in making this deed, was never regularly proved and recorded, and on the thirteenth of December one thousand eight hundred and four. Mayo by a deed of bargain and sale, conveyed to Fowler “all the remaining right, title and interest, he then had to any and every tract or tracts of laud of any description whatever, lying within the bounds of Madison county.”
Turner’s letter of attorney to his brother and its revocation.
Conveyance to Milner by Turner’s brother, under the revoked power of attorney.
Fowler conveys to Milner.
Ejectment by Milner-Arbitration and award, and judgment accordingly for Milner.
After this Vincent Turner, by a letter of attorney, bearing date the 17th of November, 1808, authorized and empowered bis brother, John Turner, to sell and convey all the real and personal estate that be then owned in the county of Madison. At this time Vincent and John Turner both resided in the State of Tennessee, and the letter of attorney, upon the acknowledgment of Vincent in open court, was ordered by the court of White county, to he recorded; but before any thing was done by John Turner., to whom the letter of attorney was given, Vincent Turner returned to this state, and caused to be published, by pasting on the doors of several of the most public houses in Richmond, Madison county, a written revocation of the power which he had given to John Turner.
Not regarding this notification, John Turner afterwards sold to Milner, the land described in the deed to Vincent Turner, by Fowler as attorney in fact of Mayo, and on the twentieth day of June, one thousand eight hundred and ten, the land was conveyed to Milner, by John Turner, as the attorney in fact of Vincent Turner.
Subsequent to this, Fowler, by a deed bearing date the 13th of April, 1813, conveyed the same land to Milner; but upon this deed there is a memorandum reciting that it was made in consequence of a deed theretofore made by Fowler, as attorney in fact for Wm. Mayo, dated the 4th of July, 1794, to Vincent Turner,' and for the purpose of passing to Milner, who claimed to he a purchaser of the land, whatever right or title might be in Fowler, in consequence of the loss of the letter of attorney under which he acted, in previously conveying to Vincent Turner.
In this state of the title, Milner brought an ejectment, for the purpose of recovering the possession of the land, and Vincent Turner having in the mean time departed this life childless, Jesse Noland, who married one of his sisters, appeared to the action, caused himself to be made a defendant, and by an agreement with Milner, bad an order of court made *242 submitting the matters in contest to the arbitration and award of Edm’d. Bullock, R. Hickman and H. Taylor. The arbitrators were of opinion, and accordingly awarded, that the legal title to the land was in Milner, and that he had right to the possession; and the award was afterwards made the judgment of the court.
Bill by Turner’s heirs against his brother and Milner, for injunction against the judgment and release of claim.
Allegations of the bill—of Turner’s insanity.
Milner’s answer.
The present defendants in error, composing all the heirs and representatives of Vincent Turner deceased, except his brother John, then exhibited their bill in equity, with injunction against Milner and John Turner, for the purpose of being relieved against the judgment at law, and to compel Milner to surrender to them whatever title or semblance of title he may have derived either under the deed from John Turner, as the agent or attorney in fact of Vincent Turner, or under the deed afterwards made to him by Fowler.
The bill sets out the various deeds of conveyance together with the different letters of attorney, and charges that at the date of the letter of attorney from Vincent Turner to his brother John, the former was, and had been, for a considerable time before, and continued until his death to he of unsound mind and memory, and totally incompetent to contract, or in any mariner to dispose of his property; and that knowing the condition of his brother, the said John improperly and fraudulently procured the power of attorney to be executed and acknowledged in the Stare of Tennessee, and after having been informed of its actual revocation by Vincent Turner, the said John combining and confederating with Milner, who also knew of the, revocation, in furtherance of bis fraudulent purpose, contracted to convey, and in fact did convey the land to Milner.
Milner answered the bill, denying the insanity of Vincent Turner, alleging his competency to contract} charging that lie was an innocent, purchaser for a valuable consideration, without fraud, and insisting upon the award of the arbitrators being conclusive upon the right set up by Use defendants in error, and contending that as the heirs of Vincent *243 Turner, they are concluded by of the letter of attorney in the court of Tennessee, from a questioning the competency of Vincent Turner to dispose of his estate.
Turner’s brother dies, and agreement to waive the revivor against his representatives.
Decree of the circuit court for injunction and release.
Evidence of Turner’s insanity examined.
During the pendency of the suit, John Turner departed this life, and the suit was discontinued as to Ids heirs, and by agreement of the parties, no excepting were to be taken on account of John’s heirs not being before the court.
The court below was of opinion that defendants in Error were entitled to belief, and decreed that Milner should convey to them five sixth of the land in contest, the other sixth being the part to which John Turner, as one of the. heirs of Vincent Turner, would have been entitled, had lie not disposed of it to Milner.
To reverse that decree, Milner has prosecuted this writ of error.
Unless there be something in the award of the arbitrators that forbids the interposition of a court of equity, we apprehend, there can be no reasonable doubt as to the correctness of the decree pronounced by the court below. As might be expected, there is not an entire concurrence of opinion, between all the witnesses whose testimony have been taken, as to the insanity of Vincent Turner at the date of the letter of attorney which lie gave to John Turner and under which John executed the deed of conveyance to Milner; but we have rarely, if ever, witnessed a case in which there was a more decided and preponderating weight of evidence to prove the fact of insanity, than is contained in the present record. So satisfactory and conclusive is the testimony upon the subject, that to us it appears impossible for. an unprejudiced mind, after having examined and maturely weighed the evidence, to hesitate a moment in coining to the conclusion that Vincent Turner was not only insane when the letter of attorney was executed by him U} his brother, but that he was known by John Turner to have been of unsound and not of disposing mind for some time before, and was then, and confined to be so until the time of his death.
Acknowledgement of a letter of attorney in court here by a lunatic, likened to the acknowledgement of a fine in England.
One who acknowledges a fine in a state of insanity may be relieved in equity.
Authorities.
Fines cannot be avoided at common law, for the cognizor’s insanity, but where there is fraud equity will give relief.
*244 Tint against this conclusion we are met by an objection taken in argument to the propriety of questioning the competency of Vincent Turner to make the letter of attorney. We were refered to the doctrine of the English law, to prove that neither the lunatic himself, or his representatives are permitted to avoid a fine and recovery or even a recognizance, entered into by the lunatic, and we were told that the acknowledgement of the letter of attorney by Vincent Turner in the court of Tennessee, by' parity of reason. Should conclude the heirs and representatives of Vincent; from enquiring into the sanity of his mind, for the purpose of avoiding the letter of attorney,
But were, tire doctrine upon the subject of fines, alluded to, admitted to apply to the acknowledgement of the power, the conclusion would not follow, that the representatives of Vincent Turner should not be allowed, in the present case, to go into the question of bis capacity to dispose of his estate. For although a fine cannot., at common law, he avoided on the ground of lunacy or idiocy, authorities are not wanting to show that even fines have been relieved against, in equity.
Thus in 1 Fon. Eq. 1 V. 52, note k. it is said, that the remainderman was relieved against a fine levied by an idiot, even against a purchaser; and in support of the assertion Tothells transactions 42. is cited. — So in the case of Addison, by b.is committee, against Dawson, Mascall &c. 2 Vern. 678, tire court decreed relief against a purchase, by deeds, fines and recoveries, procured from the lunatic at great under value. And in the rase of Wilkerson against Brayfield, 2 Vernon 307. a decree was made compelling the defendant who held under a conveyance and deed and fine, which was gained without consideration, and indirectly to re-convey.
These citations are not made to prove that in every case of lunacy it would be correct or proper for a court of equity to relieve against a fine, but they have been made for the purpose of shewing that although fines cannot be avoided at law, on the ground *245 of lunacy, yet in equity, when fraudulently obtained, relief may be had against them Tire relief which ought, however, to be given in such a case, does not absolutely set aside or vacate the fine; but considering those who have taken it, under such circumstances as trustees, the court of chancery deCrees a reconveyance of the estate to the person prejudiced by the fraud. 1 Fon. Eq. 53, note k. and the authorities there cited.
Evidence of the party’s insanity, is competent in connection with other facts to prove the fraud and imposition upon him.
Diversity between the acknowledgement of deeds with us, and the case of fines in England-Here the execution of the deed which is but acknowledged in court, is the efficacious act—there it is the judgment on the acknowledgement of the fine which passes the title and estops the party.
*245 Were we, therefore, to concede to the arknowledgement of the letter of attorney by Vincent Turner, the same force and effect of a fine, as was contended for in argument, instead of proving any thing prejudicial to the right of the plaintiffs to go into the question of the sanity of Vincent Turner, it would demonstrate more clearly the propriety of their application to a court of equity, for the purpose of compelling Milner to convey the estate, which he obtained under the authority of the power confered by the letter of attorney. For it is not upon the fact of insanity in Vincent Turner only, that the defendants in error rely for relief, but it is upon that fact, in connection with-the fraud of John Turner in procuring the letter of attorney, and in conveying the land that they have rested their case? and whatever effect may be given to the acknowledgement of the letter of attorney by Vincent Turner, it is unquestionably proper for the defendants pi error to introduce evidence of the imbecility of his mind, for the purpose of establishing, in connection with other circumstances, the artifice and fraud charged upon John Turner.
But we are not prepared to admit the propriety of applying the doctrine which seems to have been id] lowed in cases of fines &c. not so much because st has any very satisfactory-reason for its support, as because it has been so settled, to the acknowledgement of deeds before county courts. The analogy between the acknowledgement of deeds in court, and fines and recoveries, is not such as to require the application of the principles, which incidentally grow out of the one, to the other. Both are Scatters which transpire in court, but the deed in *246 the former case does not, as the fine in the latter, derive its efficacy from the act of the court. The acknowledgement of the deed in court, by a party, is hut evidence of that which was previously done, and from the doing of which, and not from the acknowledgement of having done it, all its force and effect upon the party is produced. But not so in the case of a fine. It is the judgment of the court that gives, as it were, life and effect to the fine; until the court acts, there is no right transferal; after if has acted the right is vested, and by the judgment of the court, the parties are estoped to question the right.
The like of recognizances and statutes.
Representatives of one who acknowledges a deed of conveyance or letter of attorney, in open court, or otherwise, may have it cancelled in equity.
The same remarks might be made in relation to recognizances, statutes &c. where the representatives of the person entering into the recognizance or acknowledging the statute, are not permitted to avoid them, on the ground of lunacy. They all derive their force and effect as records from the manner in which they are entered into, or acknowledged, and not as in the case of common deeds from the act of the parties.
Hence we infer, that notwithstanding the letter of attorney to John Turner was acknowledged by Vincent Turner in open court, the defendants in error, as the representatives of Vincent, are not precluded from availing themselves of Vincent’s insanity, to avoid the deed, Considered as without the influence of the principle which governs fines and recoveries, they might unquestionably have availed them selves of the insanity of their ancestor, in avoidance of the letter of attorney and the deed made thereunder to Milner at law, and we apprehend unless concluded by the award of the arbitrators, they are not precluded from doing so in a court of equity, indeed the circumstance of there being outstanding in the hands of Milner, deeds of conveyance for the land, is in itself calculated so to embarrass the title, as to'demand, in a peculiar and imposing manner, the'aid of a court of equity to clear away those obstructions, and quiet the possession. Numberless cases are to be found in the reports of chancery cases where relief has been decreed against *247 Common deeds, upon the ground of lunacy, in favor of the representatives of the lunatic.
Arbitration on the submission of one parcener of land will not conclude the others.
Submission by the husband, of a controversy concerning the title of land held in right of his wife, cannot effect more than his estate— hers will not be effected.
The submission must appear, to give effect to an award, that it may be seen the award is within the submission.
But we have seen that whilst the action at law was pending, the matter in contest .was submitted to arbitration, and that the arbitrators awarded the title to be in Milner, and in argument it was contended, that whatever right the defendants in error might have had to apply to chancery, if there had been no decision by the arbitrators, after the award made by them the question of title must be at rest, and that relief ought not to have been decreed. But as respects all the plaintiffs in error, except Noland, it is sufficient in answer to this argument to remark that they were no parties to the action at. law, had no participation in making the submission to arbitrators, and of course their interest cannot have been in any manner prejudiced by the award. As respects four-sixths of the land, therefore, the decree is most clearly correct.
But the submission to arbitration was made by Noland, and is the award as to him to have the effect to preclude a decree in his favor, for the other fourth?
The interest clamied by Noland in that fourth is in right of his wife, and no act of his can have the effect of defeating her right after his death; but during her life Noland is entitled to the use of her land, and of course may either dispose of his interest, or by any other act which would have the effect, were the right of the inheritance in him, defeat a recovery by him. Having, therefore, submitted the matter in contest to arbitration, Noland must be concluded by the award of the arbitrators so far as the arbitrators have acted within the sphere of the submission.
But as it is the submission of the parties that confers authority on the arbitrators to act, to he conclusive to any purpose the submission should be shown to enable the court to judge whether or not, in making up their award, the arbitrators have acted within the pale of their authority, in the present case, however, we have been unable to find any sub *248 mission, and of course cannot; say that the award is binding upon Noland. The award it is true, purports upon its face to have been made in pursuance to an order of court, and imports a decision by the arbitrators, that the legal title is in Milner; but the order of court containing the submission is not contained in the record, and Noland alleges that the arbitrators did not decide upon the question of the sanity of Vincent Turner.
Crittenden and Caperton, for the plaintiff; Turner, for the defendant.
Upon the whole, we are of opinion, the decree of the court is correct, and must be affirmed, with cost.